CONTAINER RING CO., INC., PLYFIBER CONTAINER CORP., AND EASTERN STEEL BARREL CORP., PLAINTIFFS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT.

Tax Court of New Jersey

August 29, 1980.

*Robert B. Haines,* for plaintiffs (Wharton, Stewart & Davis, attorneys). *Harry Haushalter,* Deputy Attorney General for defendant (*John J. Degnan,* Attorney General of New Jersey, attorney).

ANDREW, J. T. C.

Plaintiffs appeal from separate determinations of defendant denying their claims for refund with regard to plaintiffs' liability under the New Jersey Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 *et seq.* Plaintiffs claim exemption from sales and use tax and seek review of the Director's decision in this court.

The parties have submitted this matter on a stipulation of facts supplemented with written briefs. The undisputed facts are as follows:

Plaintiff Container Ring Co., Inc., manufactures and sells steel barrel rings. Plaintiff Plyfiber Container Corp. manufactures and sells fiber shipping containers, and plaintiff Eastern Steel Barrel Corp. manufactures and sells steel shipping containers. In order to provide for the delivery of its product to its customers each plaintiff leases trucks and trailers from E. & C. Holding Company. E. & C. Holding Company owns a fleet of tractors, trailers and trucks which it leases only to plaintiffs. All three plaintiffs and E. & C. Holding Company are affiliated corporations under substantially common ownership.

E. & C. Holding Company was not in the business of leasing equipment to the public. Plaintiffs were not public carriers and are not in the business of transporting goods for hire. Their use of the leased tractors, trailers and trucks was confined solely to the transportation of their own manufactured goods to their respective customers.

E. & C. Holding Company did not collect sales and use tax on the receipts obtained from the renting of its transportation equipment to plaintiffs pursuant to *N.J.S.A.* 54:32B–1 *et seq.* The periods during which the plaintiffs did not pay the tax vary, but the parties agree that if the transactions are indeed taxable, the amount of the taxes and interest at issue as calculated by defendant for each plaintiff is correct. The amounts need not be here specified. Since E. & C. Holding Company failed to collect the tax from plaintiffs, defendant imposed the tax upon each of the plaintiffs as an uncollected sales tax pursuant to *N.J.S.A.* 54:32B–14(b).

The New Jersey Sales and Use Tax, insofar as here pertinent imposed a tax of a specified percentage upon the receipts from every sale of tangible personal property except as otherwise specifically provided in the act. *N.J.S.A.* 54:32B–3(a). The term sale has been defined in the act to include rental and

lease.[1] *N.J.S.A.* 54:32B–2(f). Plaintiffs do not dispute that normally the leasing transactions would be taxable; however, they claim exemption from the imposition of the tax under the provision of *N.J.S.A.* 54:32B–8(x). This statute provides as follows in pertinent part:

(x) The renting, leasing, . . . of trucks, tractors, trailers . . . by persons not engaged in a regular trade or business offering such renting, leasing . . . to the public, provided that such renting, leasing . . . is carried on with persons engaged in a regular trade or business involving carriage of freight by such vehicles, and further provided, that in the case of any such motor vehicle acquired by the owner or first used by the owner in this State on or after July 1, 1966, any tax presumptively imposed by this act on such acquisition or use shall have been paid at the time of such acquisition or use without claim for exemption.

In order for the rental of trucks to be exempt transactions, three conditions must be fulfilled: (1) the lessor must not be engaged in a regular trade or business offering the renting or leasing of transportation equipment to the public; (2) the sales or use tax must have been paid at the time of the purchase of the transportation equipment, and (3) the lessee must be engaged in a regular trade or business involving carriage of freight by the leased transportation equipment.

The first two elements have been satisfied by the stipulation of facts submitted and are not in contention. The issue posed which involves the third criterion of the statute is relatively narrow. Were plaintiffs, who are concededly not common carriers and who use leased transportation equipment for the sole purpose of transporting their goods to their customers, engaged in a regular trade or business involving carriage of freight by trucks and trailers rented from E. & C. Holding Company?

Plaintiffs argue that the statutory requirement has been satisfied by plaintiffs' use of the leased trucks and trailers for the carriage (transportation) of its own freight (goods) to their respective customers as an integral part of their regular busi-

---

[1]The issue of whether an equipment lease is subject to the sales and use tax was decided in the affirmative in *Mal Brothers Contracting Co. v. Director*, 124 *N.J.Super.* 55, 304 *A.*2d 750 (App.Div.1973).

ness. Defendant contends that the phrase "carriage of freight" refers to goods transported by common carriers. Since plaintiff is not a common carrier and solely uses the leased transportation equipment to transport its manufactured goods to its own customers, the rental of the trucks and trailers do not fall within the exemption provision of *N.J.S.A.* 54:32B–8(x).

The general rule as to construction of exemptions in tax statutes is that exemptions are to be strictly construed against the claimed exemption because it represents a departure from the equitable principle that everyone should bear his just and equal share of the public burden of taxation. *Princeton Univ. Press v. Princeton*, 35 *N.J.* 209, 214, 172 *A.2d* 420 (1961). It is necessary to bear in mind that the fundamentally recognized principle is that taxation is the rule and exemption is the exception. The legislative intent or design to release one from his just proportion of the public burden should be expressed in clear and unambiguous terms. *Board of National Missions, etc. v. Neeld*, 9 *N.J.* 349, 353, 88 *A.2d* 500 (1952). One who claims exemption from a tax must bring himself clearly within the exemption provision. *Ibid.*

The rule, although calling for strict construction, does not require strained construction adverse to the intention of the Legislature. It requires a normal and reasonable construction. *Boys' Club of Clifton, Inc. v. Jefferson*, 72 *N.J.* 389, 398, 371 *A.2d* 22 (1977). It should be noted, however, that the qualification that a construction must also be reasonable does not destroy a constructional preference for taxability. It is in light of the foregoing principles that we now turn to plaintiffs' contentions relative to exemption from taxation pursuant to *N.J.S.A.* 54:-32B–8(x).

Plaintiffs insist that the plain meaning of "carriage of freight" is nothing more than transportation of cargo. Defendant counters by stating that "carriage of freight" also means the ordinary transportation of goods by a common carrier and cites a number of cases which may be found in 17A *Words and*

*Phrases* 340 *et seq.*, that indicate that the term "freight" signifies or connotes transportation of goods for hire. It is clear that the term "freight" does have a least two ordinarily accepted meanings. *Webster's Third New International Dictionary* (1971). The question is, which did the Legislature intend? Did it intend a broad interpretation of the words used or was the design a strict or narrow interpretation of those words. The court finds that resort must be had to extrinsic aids or those sources outside the text of the act which are relevant and helpful in an attempt to glean legislative purpose and intent.

The trend in New Jersey has been to encourage judicial use of legislative history and contemporaneous construction for whatever assistance these aids may furnish in discerning legislative intent. *Howard Savings Inst. v. Kielb*, 38 *N.J.* 186, 195, 183 *A.*2d 401 (1962); *State v. Jersey Central Power & Light*, 133 *N.J.Super.* 375, 386–388, 336 *A.*2d 750 (App.Div.1975), rev'd on other grounds, 69 *N.J.* 102, 351 *A.*2d 337 (1976). The court is mindful, however, of the admonition to carefully scrutinize these materials and evaluate the same cautiously. *Data Access Systems, Inc. v. State*, 63 *N.J.* 158, 167, 305 *A.*2d 427 (1973); 2A *Sutherland Statutory Construction* (4 ed. Sands, 1973), § 48.15.

*N.J.S.A.* 54:32B–8(x) was not part of the original Sales and Use Tax Act which took effect on July 1, 1966. *L.* 1966, *c.* 30. This section, in its present form, was part of an omnibus amendment which was introduced as Assembly Bill 705, *L.* 1967 *c.* 25, on March 6, 1967, by the bill's cosponsors, Assemblymen Halpin, Bateman and Davis. Prior to its introduction Assemblyman Halpin released a formal statement to the press indicating the intent of some of the provisions of the bill.

The original proposal as to *N.J.S.A.* 54:32B–8(x) was amended and the press release contained the following specific statement regarding the reason for the amendment.

> Presently, inter-company leases or other interchanges of carrier equipment *within the trucking trade* are exempt only if the leasing firm itself or any of its affiliates or subsidiaries do not lease equipment to the general public. This amendment would exempt such transactions on the basis of the trade practices of the leasing firm itself.
> [Emphasis supplied].

Defendant asserts that this statement indicated that *N.J. S.A.* 54:32B–8(x) was meant to exempt rentals of transportation equipment within the trucking trade and did not include a business utilizing leased transportation equipment to deliver one's own goods.

Defendant also points to the statement which was annexed to Assembly Bill 705 which indicated in paragraph 16 thereof that the exemption was to apply to "inter-changeable leasing within the trucking industry".

Plaintiffs argue that a press release by an individual assemblyman does not constitute any indication of the intention of the Legislature in its enactment of *N.J.S.A.* 54:32B–8(x). They equate the press release with legislative debate and urge that the court only consider statements appended to the bill itself. I do not agree.

It has been shown that legislators do look to a sponsor of a bill as one who would be well informed as to the purpose, meaning and intended effect of the proposed law and a Legislature familiar with the view of a sponsor will adopt his meaning in the enactment of the legislation. 2A *Sutherland, Statutory Construction, supra,* §§ 48.10, 48.15. This differs entirely from post-adoption self-serving statements of legislators or legislative debate on pending bills. *State v. Jersey Central Power & Light, supra* at 388, 336 *A.2d* 750. The policy statement appended to Assembly Bill 705 utilizes the same language as found in the press release and corroborates the statement contained in Assemblyman Halpin's statement. *Howard Savings Inst. v. Kielb, supra.*

■ In the search for legislative intent or purpose the court should not ignore those extrinsic aids or sources outside the text of the act so long as they are relevant and are of assistance in ascertaining legislative design. *State v. Jersey Central Power & Light, supra.*

■ In addition to these extrinsic aids, the Division of Taxation has advanced its interpretation of "carriage of freight" since the adoption by the Legislature of the exemption provision in 1967. It is a well settled principle that an administrative construction of a statute with which the Legislature has not interfered over a period of time is proof that the administrative interpretation conforms with the legislative intent and should be given great weight. *Jersey City Housing Auth. v. Civil Service Dept.*, 87 *N.J.Super.* 146, 149, 208 *A.2d* 416 (App.Div.1965); *Automatic Merchandising Council v. Glaser*, 127 *N.J.Super.* 413, 420, 317 *A.2d* 734 (App.Div.1974). *Hoeganaes Corp. v. Taxation Div. Director*, 145 *N.J.Super.* 352, 360, 367 *A.2d* 1182 (App. Div.1976). Here the Director has interpreted the exemption provision to mean carriage of freight for hire, or by a common carrier since its inception. The Legislature has not sought to correct this interpretation and application. This gives support to the conclusion that defendant's construction was and is correct. *Ibid.*

Plaintiffs further contend that their position is buttressed by the Legislature's use of the word "involving" in *N.J.S.A.* 54:32B–8(x). "Involving" denotes "having within or as a part of itself: containing or including." *Webster's Third New International Dictionary* (1971). The argument then proceeds on the premise that common carriers do not transport cargo or freight as a *part* of their business but rather as their sole and only business. Therefore, "involving" indicates that businesses which may take advantage of the exemption must not be solely directed toward the transportation of freight. The business must only include as a part thereof the transportation of freight. Plaintiffs' conclusion is that the choice of the term "involving" indicates a broader designation than the category of the business engaged in by common carriers who exclusively engage in the transportation of freight.

This position might have merit were it not based on a fallacious premise. The sophistry inheres in the statement that a common carrier's sole business is the transportation of freight. This totally ignores the transportation of persons or passengers

which has always been a function of common carriers, either solely or as an addition to the transportation of goods for hire.

All of the foregoing leads this court to the conclusion that the exemption provision of *N.J.S.A.* 54:32B–8(x) was intended to exempt transportation equipment rentals only in the event that such leases were being made to an entity which uses the leased equipment to transport goods for hire. The leasing of trucks and trailers by plaintiffs for the delivery of its manufactured goods to its respective customers is not included within the meaning of "a regular trade or business involving carriage of freight by such vehicles." *N.J.S.A.* 54:32B–8(x).

Accordingly, the Clerk of the Tax Court is directed to enter judgments affirming the determinations of the Director of the Division of Taxation.